UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD B. HUBBUCH,

                        Plaintiff,

        -v-                                                    CIVIL ACTION NO. 25 Civ. 4924 (JMF) (SLC)

                                                               **ORDER**

YOEL KOHN a/k/a JOEL KOHN, et al.,

                        Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

## I.INTRODUCTION

In this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), pro se Plaintiff Edward B. Hubbuch ("Mr. Hubbuch") moves for a protective order regarding Defendants'[1] requests for production of his tax returns, personal bank statements, and business records. (Dkt. No. 124 (the "Motion")). Defendants oppose the Motion (Dkt. No. 128), and Mr. Hubbuch has filed a reply in further support of the Motion. (Dkt. No. 129). For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.BACKGROUND

Mr. Hubbuch, the owner and operator of a restaurant in Brooklyn, alleges that Defendants deliberately and deceptively mis-reported his commercial lease obligations as a "personal, mortgage-like consumer loan[,]" resulting in incorrect tradelines on Mr. Hubbuch's credit reports that have resulted in him being denied credit, losing business opportunities, and

---

[1] As stated in the amended complaint, Defendants are Yoel Kohn a/k/a Joel John, 788 Franklin Realty LLC, and Watermark Capital Group LLC, individually and doing business as SDA/Watermark Capital Management. (Dkt. No. 5 ¶¶ 1, 13-16).

1

suffering harm to his reputation.  (Dkt. No. 5 ¶¶ 1, 3, 12, 25–32).  Mr. Hubbuch asserts claims under FCRA and New York law and seeks over $1,000,000 in damages.  (Id. ¶¶ 41–57).

The parties are currently engaged in fact discovery and have entered into a stipulated protective order to govern the production of confidential material.  (Dkt. Nos. 99; 100; 106).  Among Defendants' document requests to Mr. Hubbuch are requests that he produce "copies of all financial statements, quickbook [sic], ledger sheets[,]" "copies of tax returns[,]" and records concerning safety deposit boxes, money market accounts, and insurance policies.  (Dkt. No. 124 at 1 (the "Financial Records Requests")).  Mr. Hubbuch objected to the Financial Records Requests as irrelevant, overbroad, and disproportionate.  (Id.)  Defendants have continued to press Mr. Hubbuch to produce documents in response to the Financial Records Requests.  (Dkt. No. 122).  Mr. Hubbuch has represented that he has produced, inter alia, rent payment records, lease records, credit reports (with redactions), and communications with Defendants (the "Past Productions"), and that he will produce by March 15, 2026, inter alia, 401(k) statements showing depletion of his retirement savings, loan records showing increased loan costs, and denials of other loan applications.  (Dkt. No. 123 at 3 (the "Anticipated Productions")).  Mr. Hubbuch represents that he filed his federal and state tax returns jointly with his wife, who is not a party to this action.  (Dkt. No. 124 at 2).

On February 20, 2026, Mr. Hubbuch filed the Motion, seeking a protective order against the Financial Records Requests on the grounds that Defendants have not shown a compelling need for such records in light of his other productions and that the Financial Records Requests impose "a significant burden on [his] privacy and financial security with no corresponding benefit to the litigation."  (Dkt. No. 124 at 2).  On February 27, 2026, Defendants filed their opposition to

the Motion, arguing that the Financial Records Requests are appropriate because Mr. Hubbuch "has placed his finances and claimed credit-related damages squarely at issue" and the records are "directly relevant" to his "claimed losses" and "testing causation — i.e., whether the alleged credit denials/adverse financing outcomes were attributable to the credit-reporting issues alleged or instead to independent financial factors reflected in [his] income and business operations." (Dkt. No. 128 at 1). Defendants disclaim wanting to perform "a wholesale audit," and claim to "propose a narrow and protected production" of Mr. Hubbuch's tax returns for 2022, 2023, and 2024 on an attorneys'-eyes only basis "with reasonable redactions of non-party spouse personal identifiers [] and other spouse-only information[.]" (Id. at 2). On February 27, 2026, Mr. Hubbuch filed a reply, offering as a compromise to produce his "IRS Schedule C (Profit or Loss from Business) for the relevant tax years (2022–2024)," (the "Schedules C"), with an attorneys'-eyes only designation. (Dkt. No. 129 at 1).[2] He adds that Defendants' proposed redactions would not mitigate the risk to his wife's privacy and that his tax returns are irrelevant to his credit score and therefore are not relevant to causation. (Id. at 1–2).

### III. DISCUSSION

#### A. Legal Standard

The Federal Rules of Civil Procedure establish the scope of discovery as the following:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[2] Schedule C, which attaches to a Form 1040 tax return, reports income or loss from a business a taxpayer operates or a profession he practiced as a sole proprietor. See https://www.irs.gov/forms-pubs/about-schedule-c-form-1040 (last visited Mar. 2, 2026).

3

Fed. R. Civ. P. 26(b)(1).  "Rule 26 gives a district court broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on just terms."  Coty v. Cosmopolitan Cosms. Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020).[3]  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012).

Under Federal Rule of Civil Procedure 26(c), "[a] party . . . may move for a protective order . . . [and] [t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).  This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The burden of showing good cause for the issuance of a protective order falls on the party seeking the order."  Republic of Turkey v. Christie's, Inc., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018) (citing Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011)).  Good cause under Rule 26(c) requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006).  "Ultimately, the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought."  Peddy v. L'Oreal USA Inc., No. 18 Civ. 7499 (RA) (JLC), 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019); see Winfield v. City

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

4

of New York, No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 840085, at \*4 (S.D.N.Y. Feb. 12, 2018) (explaining that "the court ultimately weighs the interests of both sides in fashioning an order" under Rule 26(c)).

"Tax returns in the possession of the taxpayer are not immune from civil discovery." Hawkins v. MedApproach Holdings, Inc., No. 13 Civ. 5434 (ALC) (SDA), 326 F.R.D. 391, 393 (S.D.N.Y. 2018) (citing St. Regis Paper Co. v. United States, 368 U.S. 208, 218–19 (1961). Nevertheless, "courts generally are reluctant to order the production of personal financial documents and have imposed a heightened standard for the discovery of tax returns." Id. "A party seeking to compel production of tax returns in civil cases must meet a two-part test: first, the court must find that the tax returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." Id.; accord Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015); Sec. & Exch. Comm'n v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985).

## B. Application

The Court finds that while Defendants have demonstrated that at least some portions of the Financial Records Requests seek information that is relevant to Mr. Hubbuch's damages, Defendants have not yet demonstrated a compelling need for all of the documents responsive to the Financial Records Requests in light of Mr. Hubbuch's Anticipated Productions and his offer to produce the Schedules C. Accordingly, the Court will grant Mr. Hubbuch's Motion to the extent that, at this time, he is not required to produce documents in response to the Financial Records

Requests <u>other</u> <u>than</u> the Anticipated Productions, and, with an attorneys'-eyes only designation, the Schedules C.

First, we agree with Defendants that Mr. Hubbuch claims broad categories of damages, encompassing not only statutory damages under FCRA but also actual damages for "financial loss, lost business opportunities, reputational harm, and emotional distress in excess of $1,000,000." (Dkt. No. 5 at 25; <u>see</u> Dkt. No. 128). It is therefore conceivable that his tax returns will disclose income, liabilities, and other financial information relevant to his claimed damages. <u>See</u>, <u>e.g.</u>, <u>Hawkins</u>, 326 F.R.D. at 393–94 (requiring disclosure of plaintiff's tax returns that would disclose information about her claimed damages).

Second, however, given Mr. Hubbuch's Anticipated Production and offer to produce the Schedules C, Defendants have not yet shown that the information contained elsewhere in the tax returns and other documents potentially responsive to the Financial Records Requests "is not otherwise readily obtainable." <u>Rosas</u>, 127 F. Supp. 3d at 11. Following Mr. Hubbuch's delivery and Defendants' review of the Anticipated Production and the Schedules C, as well as Mr. Hubbuch's anticipated deposition, should Defendants continue to believe that the tax returns or other financial records are necessary, they may renew the Financial Records Requests. Until then, they have not shown the requisite compelling need.

## IV. CONCLUSION

For the reasons set forth above, Mr. Hubbuch's Motion is **GRANTED IN PAR**T and **DENIED IN PART** to the extent that he shall produce, subject to an attorneys'-eyes only designation, the Schedules C, and shall produce the Anticipated Production, but, at this time, is not required to produce further documents in response to the Financial Records Requests. The parties shall be

6

prepared to discuss the status of these productions and fact discovery at the case management

conference scheduled for April 14, 2026.  (Dkt. No. 126).

The Clerk of the Court is respectfully directed to close Dkt. No. 124.

Dated:       New York, New York
             March 2, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge